UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA

       -v-                                    Docket No.: 24 CR 242 (RMB)

MIGUEL BARRERA

                Defendant
----------------------------------------------------------X

## PRESENTENCE MEMORANDUM

Respectfully submitted,

ALBERTO A. EBANKS
EBANKS LAW FIRM, PLLC
20 Vesey Street, Suite 503
New York, NY 10007
(212) 766- 4434

**Table of Contents**

Preliminary Statement................................................................................................. 3

Mr. Barrera's Background........................................................................................... 3

Miguel Barrera Today................................................................................................. 5

The Offense Level Calculation.................................................................................... 6

Sentencing Considerations.......................................................................................... 7

Harsh Conditions at MDC........................................................................................... 9

Conclusion.................................................................................................................... 11

**Table of Authorities**

*United States v. Carpenter*, 320 F.3d 334,345 (2d Cir. 2003)..................................... 10

*United States v. Morgan*, No. 19-cr-209 (RMB) (S.D.N.Y. 2020)............................... 10

*United States v. Chavez*, 22 CR 303 (JMF) (S.D.N.Y. Jan. 4, 2024)........................... 11

**Exhibit List**

Exhibit "A" – Sergio Barrera recommendation or employment, with translation

Exhibit "B" – Commendations from local school and Churches, with translations

Exhibit "C" – BOP Program Certificates

Exhibit "D" – Kitchen work assessment

Exhibit "E" – Letter from Local 2005 regarding understaffing at MDC, 9-17-22

Exhibit "F" – MDC Memo December 2023

Exhibit "G" – MDC Website captured on 7-23-24 at 10:45 AM

Exhibit "H" – Letters in support from Mr. Barrera's Community, with translations

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA

-v-                                                    Docket No.:  24 CR 242 (RMB)

MIGUEL BARRERA

                                                       **PRE-SENTENCE MEMORANDUM**

           Defendant.

------------------------------------------------------------X


## PRELIMINARY STATEMENT

We respectfully ask the Court to consider this memorandum submitted in advance of Mr.

Barrera's sentencing, currently scheduled for August 6th, 2024. Plainly speaking, Mr. Barrera

made an indefensible decision to involve himself in the illegal export of firearms and firearms

components and to engage in money laundering. That choice is now bearing repercussions not

only for him but also his family as he faces sentencing. Despite the seriousness of the offense, it

is worth noting that Mr. Barrera is 37 years old, has always been gainfully employed, is college-

educated, and has never before in his life been charged with a crime, infraction, or violation, in

this country or any other country. Mr. Barrera is also a devoted husband and father to two young

children, and possesses all the proper motivators to rebound from this chapter of his life with the

support of his family.


## MR. BARRERA'S BACKGROUND

Miguel Barrera was born in 1986 in the Bronx, to Sergio Barrera and Consuelo Garcia. His

father was present in his early life and was married to his mother until the time of his death at 55

3

years of age. The Barrera family spent several years in the Bronx, but moved to Mexico when Miguel was only 3 years old. After a short stint in Puebla, the family moved to the suburbs in the town of Tulcingo where the brothers grew up in a modest two-bedroom home and experienced many of the joys of youth together, laying the foundation for their strong bonds today. Sergio is the oldest at 40 years old, living in Puebla, Mexico. Sergio is an attorney, and wishes for his brother to rejoin his law firm upon release[1]. His younger brother, Orlando, is 35 years old and living in Tulcingo, Mexico. His youngest brother, Omar lives in Tulcingo as well, he is 33 years old.

Miguel Barrera returned to the US as a young man, working diligently and saving money in order to return home and earn his law degree in Mexico. Shortly thereafter, he met his now-wife, Yariveth Rodriguez. They married in December of 2016, welcomed their first child together two years later, and had a second child in 2021. The two children are both in school and Ms. Rodriguez works as a chemical analyst in a medical facility. Mr. Barrera developed strong ties to his community and gave his time and money toward helping a local school with programs for children with disabilities as well as local churches.[2] Prior to the arrest, he was working alongside his brother Sergio at Sergio's law firm dealing with civil matters. He was also running two legitimate businesses, one shipping local foods from Puebla to New York City, and the other was a sporting goods store in Mexico. This sporting goods store was a legal retailer of hunting and sporting equipment and accessories involving firearms, including the following:

- Ammunition
- hunting clothing
- lantern

---

[1] Exhibit "A" Sergio Barrera recommendation or employment, with translation
[2] Exhibit "B" Commendations from local school and Churches, with translations

4

- knives

- gun cleaning kits

- telescopic sights

- pistol and shotgun holsters

- pistol grips

- animal call devices

- some spare parts such as springs and screws

- air-powered pellet guns

- pepper spray

- rifle slings and cheek pads

It is important to note that the firearms and firearms components were legally purchased in this country, and that Mr. Barrera was selling the same to sportsmen and gun enthusiasts rather than arming bands of criminals.

## MIGUEL BARRERA TODAY

The Miguel Barrera who will stand before you for sentencing is much more than the sum of the bad decisions that led him here. Mr. Barrera continues to be very close with his family, who continue to support him despite his incarceration in America. Mr. Barrera's brother Sergio, in particular, has stood by his brother and describes him as having succumbed to his own ambitions in trying to make a better life for his family. Considering the fact that Sergio will hire Mr. Barrera as noted above; I believe this shows that upon his release, Miguel Barrera will have a dedicated support system and plan to move forward with his life. He is immediately ready for day one.

Mr. Barrera has been a model inmate during his pretrial incarceration in the Metropolitan Detention Center ("MDC"). He has not been involved in any fights, dealt in any contraband, or disobeyed directives by Corrections Officers. He has successfully completed multiple programs[3] and has voluntarily worked in the kitchen[4], rising to higher levels of responsibility and job duties over these past months. It is fair to say that if you wish to know whether a program exists at the MDC, all you have to do is check whether or not Mr. Barrera has completed it.

## THE OFFENSE LEVEL CALCULATION

Pursuant to the plea agreement and the Presentence Report the Sentencing Guidelines exposure is 70-87 months, as follows:

1. Because the offense involved firearms and beyond the specified exceptions in 2M5.2 (a)(2), the base offense level for Count One is 26.

2. Because this conviction falls under 18 USC 1956, the offense level is increased by two levels.

3. Because the defendant was a manager or supervisor of a criminal activity that involved fewer than five participants, the offense level is increased by two levels.

5. Because the defendant has clearly demonstrated his acceptance of responsibility, a two-level reduction will be warranted.

---

[3] Exhibit "C" BOP Program Certificates
[4] Exhibit "D" Kitchen work assessment

6. In light of Mr. Barrera's acceptance of responsibility and timely notice of his intention to plead guilty, we believe the Government will move at sentencing for an additional one-level reduction.

This brings the Offense Level to 27.

Mr. Barrera, as previously stated, is a first-time offender. This puts him in Criminal History Category I. This charge has no mandatory minimum period of incarceration, and based on the above the guidelines range is 70 to 87 months.

<b><u>SENTENCING CONSIDERATIONS</u></b>

After calculating the applicable guidelines range, among the factors outlined in 18 U.S.C. § 3553(a) to be considered are the nature and circumstances of the offense, the history and characteristics of the defendant, and the four legitimate purposes of sentencing. The four legitimate purposes of sentencing call for the sentence imposed to: (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. Guided by the "parsimony clause" of 18 U.S.C. § 3553(a)(2), a sentence must be "sufficient, but not greater than necessary, to comply with" the above factors.

Mr. Barrera has two children, both under the age of 10. Mr. Barrera recognizes that he committed serious crimes. It should be noted, the firearms here are the crime, not the instrumentality of other crime. As previously stated, Mr. Barrera is a first-time offender who attempted to sidestep licensing and export requirements that would have allowed him to take his

sporting goods business to the next level as a licensed gun dealer. He didn't set out to live a flashy life surrounded by displays of wealth and power, he just wanted to provide for his children. He continued in his lawful business activities, because these unlawful activities were not his life pursuit or his sole source of income. It cannot be understated that Mr. Barrera is a diligent and hard worker, as evidenced by his continued commendations in his work assignments during his pretrial detention.

While it is not usually my practice to ask for a specific sentence, the nature of this crime combined with Mr. Barrera's high likelihood of success moving forward compel me to ask this Court to sentence Mr. Barrera well below the guidelines, which I earnestly believe will satisfy the four legitimate purposes of sentencing.

Any need for general deterrence and respect for the law will be satisfied by a sentence substantially below the guidelines. This would give Mr. Barrera a better opportunity to re-enter the workforce upon his release and would recognize the time Mr. Barrera has already spent incarcerated in the Metropolitan Detention Center, his evident rehabilitation, and his acceptance of responsibility.

Lastly, Mr. Barrera has plans to move back to Mexico upon his release or as soon as the Court will allow. He has a job offer through his brother, who is deeply familiar with his dedication. and work ethic. Present circumstances aside, it is evident that he would be a valuable addition to their team. It must be mentioned that any potential for harm to the community stemming from these actions have already been fairly addressed, in that Mr. Barrera has recognized the harmful nature of his actions and will never again put the pursuit of money before the needs of his family and his community.

## HARSH CONDITIONS AT MDC

Although pretrial detention is not intended to be punitive, the culture of pretrial detention, particularly at the MDC, means that unduly harsh punitive treatment has become the norm. Mr. Barrera has already experienced a great deal of "just punishment," 18 U.S.C. § 3553(a)(2)(A), for his role in the offense conduct, due to the infamously difficult nature of confinement in the MDC. The Court is permitted to, and should, consider the harsh conditions Mr. Barrera has endured for the last nine months throughout the pendency of this case. See, e.g., *United States v. Carpenter*, 320 F.3d 334,345 (2d Cir. 2003). Courts in this Circuit have recognized that the harsh and inhumane conditions of the MDC and other jails are properly considered at sentencing.

At the sentencing in *United States v. Morgan*, No. 19-cr-209 (RMB) (S.D.N.Y. 2020), this Court determined that the "unfortunate terrible" conditions and "deficient system" at the MDC were "many times compounded by this coronavirus," noting that it was an "outrage" and that he had serious doubts about the ability of New York City's federal jails to safely house detainees. Sentencing Tr. At 13-15, Dkt. No. 92. Though the pandemic is over, the conditions never improved.

The facility continues to be chronically and dangerously understaffed, as attested by the attached letter from the President of the MDC Correction Officer's Union, AFGE Local 2005, dated September 17th, 2022[5]. "Because of the North East regions refusal to approve TDY[6] staff, and our own shortage of staff; housing units are left vacated (unmanned) at times for an entire shift. On the weekends/holidays the roster will reflect one officer supervising 3 housing units

---

[5] Exhibit "E" Letter from Local 2005 regarding understaffing at MDC, 9-17-22
[6] TDY = Temporary Duty Travel Modification; temporarily transferring Officers from other facilities on a per-diem basis

alone... On 9-09-2022 there were multiple housing units left unsupervised, there were inmates on Suicide Watch, with no Officer assigned..."

As feared, the pervasive staffing shortage created a hazard for inmates as well as Correction Officers, and one of the latter was the victim of an assault in December of 2023 (and I note that Miguel Barrera was not a party in that incident). This prompted the administration to suspend all personal visitation as a punitive measure, noting in a memo that "Return to normal operations is strictly based on inmate behavior and will be assessed daily."[7] Since that time, total lockdown of the facility has been the administrative remedy of choice for every major infraction committed by an inmate. On June 7th of this year, an inmate was murdered, and the staff placed the entire facility on lockdown for days. Just last week, on July 17th, another inmate was killed in a violent brawl and the facility was again placed on lockdown for several days. In fact, I observed that was still in lockdown during my visit with Mr. Barrera yesterday morning, and it remained suspended until shortly before this filing.[8]

The security shortfalls and constant isolation of over 1,300 inmates, most of whom are detained in a pretrial capacity, are only a sample of the inhumane conditions inmates face in the MDC; as another Judge in this District recently put it, "Prosecutors no longer even put up a fight, let alone dispute that the state of affairs is unacceptable." See *United States v. Chavez*, 22 CR 303 (JMF) (S.D.N.Y. Jan. 4, 2024). While Judge Furman referred to the same staffing shortfalls observed above, he also noted that it was not surprising that staff recruitment continued to fail to fill those shortages, citing the fact that "the starting salary for federal corrections officers in the New York area is barely above $45,000 – only about half of the Area Median Income for a

---

[7] Exhibit "F" MDC Memo December 2023
[8] Exhibit "G" MDC Website captured on 7-23-24 at 10:45 AM

single-person household in New York City." *Chavez,* Amended Opinion and Order pg 3, Dkt. No. 32.

It could be concluded that the powers that be continue to turn a blind eye to these issues because there is a pervasive expectation at every level of our society that pretrial detention should be harsh punishment in its own right, even before guilt is established. "Innocent until proven guilty" has been replaced in the Court of Public Opinion with "Don't do the crime if you can't do the time."

## **CONCLUSION**

Mr. Barrera did not set out to become fantastically rich. He saw an opportunity to make extra cash in a fairly limited scheme to smuggle firearms and firearms components to Mexico for a profit. He was already a legal ammunition dealer, and ventured beyond that for higher profit margins. Nevertheless, Mr. Barrera recognizes that what he did was very wrong, and furthermore that his actions imperiled the stability and security that he had previously established for his family. He deeply regrets allowing himself to fall under the sway of easy money after having worked so hard to build his family up.

Upon his release from prison, he will be well-positioned to stay on the right side of the law. He is grateful to enjoy the love and support of his family members and has every reason to look forward to a brighter future after he closes this ugly chapter of his life. Based upon those and various other factors laid out here and at the time of sentencing, I submit that a sentence substantially below the guidelines is appropriate.

11

Respectfully submitted,

ALBERTO A. EBANKS
THE EBANKS LAW FIRM
20 VESEY ST. ROOM 503
NEW YORK, NY 10007

Hon. Richard M. Berman
United States District Court
Southern District of New York
500 Pearl St, Room 17B
New York, NY 10007


USA Damian Williams
United States Attorney's Office
CC: AUSA Camille Fletcher
One St. Andrews Plaza
New York, NY 10007