

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 30, 2024

**BY ECF**
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:        ***United States v. Miguel Barrera*, 24 Cr. 242 (RMB)**

Dear Judge Berman:

Miguel Barrera, the defendant, orchestrated a scheme that smuggled hundreds of firearms and firearm components from the United States to Mexico between April 2022 and November 2022. The defendant's actions endangered lives and exacerbated an epidemic of gun violence. A term of imprisonment within the Stipulated Guidelines range of 70 to 87 months is appropriate here and would be sufficient but not greater than is necessary to achieve the legitimate goals of sentencing.

## I.        Background

### A.  Offense Conduct

From at least in or about April 2022 until in or about November 2022, the defendant laundered nearly $700,000 to purchase firearms and firearm components from around the United States; he then instructed his co-conspirators to smuggle those firearms and firearm components from the United States to Mexico. (PSR ¶ 33).

The defendant designed and managed the scheme, and he was intimately involved in its execution. *Id.* ¶¶ 15, 33. The defendant provided the funds, and he directed others to purchase firearms and firearms components. *Id.* ¶¶ 33.  He also organized the logistics of the operation, including the packaging, labelling, and shipping of the firearms and firearm components. *Id.* ¶¶ 15; 23-26.

The firearm components were primarily AR-15 parts, such as upper receivers, lower parts kits, charging handles, and grips. *Id.* ¶¶ 18-19. The completed firearms were handguns like the Taurus G2C. *Id.* ¶ 28. Pictured below are some of the firearms and firearm components that the defendant smuggled or tried to smuggle to Mexico. (Complaint at 8, 12, 14).






### B.    Procedural History

On June 8, 2023, the defendant was charged by criminal complaint with one count of knowingly and willfully conspiring to traffic firearms, in violation of 18 U.S.C. § 933(a)(3), and one count of fraudulently and knowingly exporting goods contrary to United States laws and regulations, in violation of 18 U.S.C. §§ 554 and 2. (Complaint ¶¶ 1-3). He was arrested on June 9, 2023, and has been detained since. (PSR at 1).

On April 18, 2024, the defendant pleaded guilty to a two-count Information pursuant to a plea agreement. *Id.* ¶ 6. Count One of the Information charges the defendant with smuggling goods, specifically firearms and firearm components, from the United States to Mexico, in violation of 18 U.S.C. §§ 554 and 2. (Information ¶ 1). Count Two charges that the defendant with money laundering in relation to the smuggling operation charged in Count One, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2. *Id.* ¶ 2.

### C.     Guidelines Calculation and Presentence Investigation Report

In the plea agreement, the parties agreed that the defendant's applicable total offense level is 27 and his Criminal History Category is I, resulting in a Guidelines range of 70 to 87 months' imprisonment (the "Stipulated Guidelines"). (PSR ¶ 7(a)-(c)). The Probation department concurs with the parties' calculations. *Id.* ¶ 92. Probation recommends a sentence of 60 months' imprisonment, based on the defendant's lack of criminal history, consistent employment, and familial responsibilities. *Id.* at 27-29.

The defendant seeks a sentence substantially below the Guidelines range, for among other reasons, his status as a first-time offender, his supportive family, the conditions at the MDC, his good conduct since his incarceration. (Def. Submission at 5-11.)

## II.    Applicable Law

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any pertinent policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. The relevance of the Guidelines throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

## III.    Discussion

The Government respectfully submits that the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence within the Stipulated Guidelines range. The factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant and others, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A)-(C).

The defendant's conduct was dangerous, and it was part of a pattern of activity that threatens communities across the United States and Mexico, particularly those in communities where gun violence is the most prevalent. It is critically important that the Court make clear that such conduct cannot and will not be taken lightly. At a time when gun violence is so prevalent, the need for general deterrence is particularly striking. *See United States v. Cavera*, 550 F.3d 180 (2d. Cir. 2008) (considering the district court's decision to consider New York market conditions in order to accomplish the goal of general deterrence in a gun trafficking case and holding no abuse of discretion). Gun trafficking is so significant of an issue that Congress sought fit to directly address it as part of the Bipartisan Safer Communities Act, recently passed in June 2022. The Act, among other things, created new federal criminal violations targeting gun trafficking and provided for a 15-year maximum sentence for each offense. A Guidelines sentence of incarceration would send a message to the defendant and others like him, that gun trafficking is a serious offense and that it will not be tolerated.

The seriousness and the dangerousness of the conduct here is magnified by the fact that the defendant purchased and smuggled a large quantity of assault rifle components. Assault rifles, and particularly AR-15 assault rifles, have featured prominently in mass shootings, including the 2022 Buffalo shooting, the 2022 Uvalde shooting, the 2017 Sutherland Spring Shooting, the 2017 Las Vegas shooting, the 2016 Orlando shooting, and the 2012 Sandy Hook Shooting. In the last three years, assault rifles have accounted for close to two-thirds of all major shootings.[1]  And even if

---

[1] *See Are Handguns or Rifles Used More Often in Mass Shootings?*, THE TRACE (July 18, 2023), *available at* https://www.thetrace.org/2023/07/mass-shooting-type-of-gun-used-data/.

used as a tool of ordinary crime (rather than as an instrument of mass murder), such weapons are deadly to a degree far beyond that of handguns.

The scourge of gun violence is not limited to the United States; it has also spread to Mexico. Mexican officials have expressed grave concerns over the smuggling of firearms from the United States.[2] ATF statistics confirm that about 70% of firearms recovered in Mexico originate in the United States.[3] American firearms smuggled into Mexico have killed Mexican citizens as well as American citizens.[4] Assault rifles, like the AR-15, smuggled from the United States are the "weapon of choice" for drug cartels.[5] Drug cartels inflict untold violence upon communities across North America and drive the deadly crisis of overdose deaths in the United States.[6]

Individuals like the defendant who illegally traffic in firearms are the driving force behind an epidemic of gun violence in the United States and Mexico. Motivated by greed, the defendant

---

[2] *See, e.g.*, Alain Stephens, *U.S. Agents Are Seizing More Guns Headed to Mexico*, THE TRACE (Mar. 7, 2024), *available at* https://www.thetrace.org/2024/03/us-mexico-gun-trafficking-border-cbp ("Alejandro Celorio Alcántara, a legal adviser for Mexico's Foreign Ministry, said the Mexican government has long pushed the United States to prioritize tackling gun trafficking at the border."); James Bargent, *Mexico Minister Says US Gun Control Laws Fuel Criminal Violence*, INSIGHT CRIME (Aug. 23, 2016), *available at* https://insightcrime.org/news/brief/mexico-minister-says-us-gun-control-laws-fuel-criminal-violence ("'[Mexico's] efforts are limited by the thousands of illegal weapons that arrive in our country every year from our northern border,' she said. According to the minister, Mexican authorities have traced 70 percent of weapons seized in the country to buyers or distributors in the United States.").

[3] *See* U.S. GOV'T ACCOUNTABILITY OFF., GAO-21-322, FIREARMS TRAFFICKING: U.S. EFFORTS TO DISRUPT GUN SMUGGLING INTO MEXICO WOULD BENEFIT FROM ADDITIONAL DATA AND ANALYSIS 12 (2021).

[4] *See, e.g.*, *Texan Admits to Firearms Offense Linked to Matamoros Murder of U.S. Citizens*, U.S. ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF TEXAS (May 17, 2023), *available at* https://www.justice.gov/usao-sdtx/pr/texan-admits-firearms-offense-linked-matamoros-murder-us-citizens.

[5] *See* Stephens, *U.S. Agents Are Seizing More Guns Headed to Mexico* ("Many of last year's seizures involved assault-style rifles, which U.S. authorities have said are among the cartels' 'weapons of choice.'"); *Damming the Iron River*, EVERYTOWN FOR GUN SAFETY (May 21, 2024), *available at* https://everytownresearch.org/report/damming-the-iron-river/ ("It is no coincidence that cartels choose the same types of assault weapons, namely AR-15s and AK-47s, that have been used in the deadliest mass shootings in the United States. These weapons allow shooters to unleash rapid-fire barrages on unsuspecting victims in seconds.").

[6] *See* Stephens, *U.S. Agents Are Seizing More Guns Headed to Mexico* ("These guns have bolstered the cartels that U.S. authorities blame for a surge in American overdose deaths. In 2023, the United States suffered more than 112,000 fatal drug overdoses for the first time ever. The majority of those deaths involved fentanyl and other synthetic opioids, much of which is synthesized in Mexico before being smuggled over the border.").

and others like him exploit the seams in the national gun regulation framework, acting with complete disregard for the danger they create and the lives they put at risk through their actions.

The defendant has tried to frame his conduct as aberrant, which is simply belied by the facts. The defendant was not a low-level courier who made one bad decision. The defendant was the leader of a conspiracy to smuggle hundreds of firearms and firearms components from New York City into Mexico. He ran this sophisticated scheme over several months. The defendant provided the funds, chose the firearms and firearm components, and specified the quantities that were bought. He also provided detailed instructions for packaging and the drop-offs. He profited immensely from the sale of assault rifles and other guns.

The defendant's status as an attorney and business owner, and his extensive family responsibilities underscore the egregiousness of his conduct. He was not a naïve youth succumbing to the pressure of desperate circumstances. The defendant was an officer of the law, who chose to risk his stable career and loving family for the sake of higher profits. Further, the defendant claims that he sold the firearms and firearm components only to sportsmen and gun enthusiasts, but he offers no support for that claim. (Def. Submission at 5.) There is simply no way that the defendant can know for certain that the firearms and firearm components did not end up in the hands of the cartels.

The defendant's conduct was very reckless and driven by greed. It caused hundreds of deadly weapons to be sold illegally. A substantial sentence, like a sentence within the Stipulated Guidelines range, is necessary to properly account for the seriousness of the offense, to promote respect for the law, and to deter the defendant and others who wish to engage in similar conduct.

**IV.**     **Conclusion**[7]

For the reasons set out above, the Government respectfully requests that the Court sentence the defendant to a term of imprisonment within the Guidelines range of 70 to 87 months' imprisonment.

Respectfully,

DAMIAN WILLIAMS
United States Attorney

By:_____/s/_____
Camille L. Fletcher
Andrew W. Jones
Assistant United States Attorney
(212) 637-2383 / 2249

cc:     Alberto A. Ebanks, Esq. (via ECF)

---

[7] ████████████████████████████████
████████████████████████████████
████████████████